# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

Kenneth Cook
James Botts
Shawn Hunter
Larry LaClair
Thomas Short
George Willis
James Cahoon
Chris Paulley, on behalf of themselves
and others similarly situated,

      Plaintiffs,

  vs.

E. I. DU PONT DE NEMOURS AND COMPANY,

      Defendant.

CASE NO.

**CIVIL ACTION COMPLAINT COLLECTIVE ACTION**

**JURY TRIAL DEMANDED**

## COMPLAINT

### INTRODUCTION

1. Plaintiffs, by and through their counsel, the law firm of Woodley & McGillivary LLP and the Yezbak Law Offices, respectfully submit their complaint against E.I. DuPont de Nemours and Company ("DuPont") on their own behalf and on behalf of all similarly situated employees who worked in Hourly Paid Positions at one of defendant's plants nationwide.

2. At its 50 facilities nationwide, DuPont violated the Fair Labor Standards Act ("FLSA") and the most basic fair labor standard — that employees are entitled to a fair day's pay for a fair day's work — in failing to pay overtime in a timely fashion at the required rate of one and one-half times the employees' regular rates of pay.

3. The regular rate of pay is the keystone to the FLSA because it provides the base point from which the employees' overtime is calculated. Here, the representative plaintiffs and

all similarly situated employees toil long hours at DuPont's 50 facilities nationwide in Hourly Paid Positions. In return, DuPont unlawfully deprived the representative plaintiffs and all similarly situated employees of the overtime compensation at the rate of one and one-half times plaintiffs' regular rates of pay in violation of the FLSA by purposefully excluding certain payments from the plaintiffs' regular rates of pay, and in addition, by paying overtime months, or even years, after plaintiffs had worked that overtime.

## PARTIES

2.      Plaintiffs are current or former employees of the defendant, and they bring this action as a collective action in accordance with 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") against the defendant on behalf of themselves and all others similarly situated because of defendants' unlawful deprivation of plaintiffs' rights to overtime compensation. Plaintiffs seek compensation, damages, equitable and other relief available under the FLSA, as amended, 29 U.S.C. §201, *et seq.*

3.      At all times material herein, the representative plaintiffs Kenneth Cook, James Botts, Shawn Hunter, Larry LaClair, Thomas Short, George Willis, James Cahoon, and Chris Paulley have been employed by the defendant DuPont, at DuPont's Old Hickory Plant in Davidson County, Tennessee ("Old Hickory Plant"), DuPont's Spruance Plant in Chesterfield County, Virginia ("Spruance Plant"), or DuPont's Louisville Plant in Jefferson County, Kentucky ("Louisville Works Plant") in Hourly Paid Positions. In their positions, plaintiffs were eligible for, and were in fact paid, premium payments in addition to their hourly wages. When paid premium pay in addition to their hourly wages, defendant failed to include the premium pay in their regular rates of pay for purposes of calculating and paying them overtime compensation

for working in excess of forty (40) hours in a week. They bring their claims on behalf of themselves and other similarly situated employees.

4. At all material times, the remaining 400 "opt-in" plaintiffs have occupied Hourly Paid Positions. The exact dates of the work assignments and the hours of work of the 8 representative plaintiffs and the remaining 400 opt-in plaintiffs are in the custody and control of the defendant and the defendant knows specifically what dates each of plaintiffs have occupied Hourly Paid Positions and the precise dates of such information will be reflected in defendant's documents.

5. Plaintiffs bring this action for back pay, liquidated damages and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331, to remedy the defendant's willful and unlawful violations of federal law complained of herein.

6. The above-named representative plaintiffs and the opt-in plaintiffs are identified in the caption of the Complaint and have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are attached as Exhibit A. These written consent forms set forth each plaintiff's name and address. A list of all opt-in plaintiffs who have given their written consent to be party plaintiffs in this action is attached as Exhibit B.

7. Each of the plaintiffs in this action, while employed by the defendant, has been an "employee" within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 203(e)(1).

8. Defendant DuPont is an employer within the meaning of Section 3(d) of the FLSA. DuPont's principal office and place of business is located at 974 Centre Road, Wilmington, Delaware, 19805. DuPont has in its possession, custody, and control all of the employment records of the representative plaintiffs and those similarly situated to them so that

DuPont can identify exactly when each of the plaintiffs listed in the caption worked in Hourly Paid Positions and, in addition, plaintiffs' payroll records that reflect the plaintiffs' hours of work and the amounts paid to them.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and 28 U.S.C. §1367(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

11. Since June 1, 2014, as well as before, the representative plaintiffs have worked within the Spruance Plant, Old Hickory Plant, and Louisville Works Plant for the defendant and have occupied Hourly Paid Positions.

12. At all times material herein, the representative plaintiffs have been employed by defendant DuPont.

13. At all times material herein, representative plaintiff Kenneth Cook has worked as an operator Hourly Paid Position at the Old Hickory Plant. At all times material herein, representative plaintiff Kenneth Cook has worked at DuPont's Old Hickory Plant, located at 1002 Industrial Dr., Old Hickory, TN 37138.

14. At all times material herein, representative plaintiffs James Cahoon and Chris Paulley have worked in operator Hourly Paid Positions at the Louisville Works Plant. At all times material herein, representative plaintiffs James Cahoon and Chris Paulley have worked at DuPont's Louisville Works Plant, located at 4200 Camp Ground Rd, Louisville, KY 40216.

15. At all times material herein, representative plaintiffs Larry LaClair, Shawn Hunter, Thomas Short and George Willis have worked as control equipment technician,

maintenance electrician, electrician, or instrument technician in Hourly Paid Positions at the Spruance Plant. At all times material herein, representative plaintiff James Botts has worked as a plant technician in an Hourly Paid Position at the Spruance Plant. At all times material herein, representative plaintiffs Larry LaClair, Shawn Hunter, Thomas Short, George Willis, and James Botts have worked at DuPont's Spruance Plant, located at 5200 DuPont Site Rd, Richmond, VA 23234.

16. The Old Hickory and Louisville Works Plants are staffed with workers who work rotational shifts, or "shift workers." These workers rotate between two twelve-hour long shifts to ensure continuous 24-hour coverage. The two twelve hour shifts are from 6:00 am to 6:00 pm, and from 6:00 pm to 6:00 am. The workers' schedule causes the workers to work four twelve-hour night shifts, followed by three days off, followed by three twelve-hour day shifts, followed by one day off, followed by three twelve-hour night shifts, followed by three days off, followed by four twelve-hour day shifts, followed by one week off. The work schedule rotation then repeats. This rotation causes a workers' regular schedule to comprise of 168 hours of work in a 28-day rotation, with some weeks 48 hour workweeks. All shifts are staffed with employees in Hourly Paid Positions.

17. The Spruance Plant is staffed with "day workers" and "shift workers." Day workers work Monday through Friday from 7:00 am to 3:30 pm. Shift workers rotate between three eight-hour long shifts to ensure continuous 24-hour coverage, 365 days a year. The three eight-hour shifts are from 8:00 am to 4:00 pm, 4:00 pm to 12:00 am, and 12:00 am to 8:00 am. Shift workers rotate shifts each week. All shifts are staffed with employees in Hourly Paid Positions.

18. In addition to their regularly scheduled hours, plaintiffs, and all similarly situated employees in an Hourly Paid Position at DuPont's 50 plants nationwide, routinely work additional overtime shifts, and thus regularly work more than 40 hours in a 7-day period.

19. Prior to April 1, 2016, DuPont utilized a payroll system or service called MyInfo. During this time, DuPont failed to include premium payments of plaintiffs and other similarly situated employees in Hourly Paid Positions, when calculating the regular rate at which overtime was paid, including but not limited to, its failure to include shift premiums and meal allowance payments in plaintiffs' regular rates of pay.

20. As such, during the weeks that the plaintiffs worked more than 40 hours, DuPont violated the FLSA by failing to pay plaintiffs for overtime work performed over the 40-hour threshold until more than two pay periods after the work was performed.

21. The plaintiffs, and all similarly situated employees who worked at one of DuPont's plants nationwide, worked significant amounts of overtime, but DuPont failed to provide the overtime pay to which they are entitled under the law, and failed to pay overtime in a timely manner.

*Failure to Include Premium Payments in the Regular Rate*

22. Employees in Hourly Paid Positions receive premium payments in addition to their hourly wages.

23. Employees in Hourly Paid Positions receive shift premiums payments of 5% or 10%, depending on their assignments as either a "day worker" or a "shift worker."  For example, when a "day worker" employed by defendant works from 4:00 pm to 12:00 am, he or she receives a 5% shift premium. When a "day worker" works from 12:00 am to 8:00 am, he or she receives a 10% shift premium.

24. "Shift workers" employed by defendant (hourly paid employees who work rotating shifts) always earn a 10% shift premium for working overnight.

25. Prior to April 1, 2016, and continuing thereafter, these premiums were not included in the regular rate of pay at which overtime was paid.

26. Employees in Hourly Paid Positions also routinely earn between $10-$30 each shift as meal allowance premium payments for working beyond their regular schedule, the amount of which depends on whether they are working on a regularly scheduled workday, or on a regular day off. Prior to April 1, 2016, and continuing thereafter these meal allowance premium payments were not included in the regular rate of pay at which overtime was paid.

27. For example, representative plaintiff LaClair worked over 40 hours during the week of February 8, 2016, and earned shift premiums and meal allowances. These premium payments were not included in the rate at which plaintiff LaClair was paid overtime for that work week.

28. Similarly, representative plaintiff LaClair worked over 40 hours during the week of January 25, 2016. These premium payments were not included in the rate at which plaintiff LaClair was paid overtime for that workweek.

29. As a result of these omissions, representative plaintiff LaClair was denied compensation in violation of the FLSA because defendant miscalculated the regular rate with which it used to calculate his overtime compensation.

30. Additionally, representative plaintiff Willis is a "shift worker" and earns a 10% shift differential for all hours worked. For example, he worked over 40 hours during the week of January 11, 2016, and earned meal allowances. These premium payments were not included in the rate at which representative plaintiff Willis was paid overtime for that period.

31. Similarly, representative plaintiff Willis worked over 40 hours during the week of July 27, 2015, and earned meal allowances. These premium payments were not included in the rate at which plaintiff Willis was paid overtime for that work week.

32. As a result of these omissions, representative plaintiff Willis was denied compensation in compliance with the FLSA because defendant miscalculated the regular rate with which it used to calculate his overtime compensation.

33. Similar to the representative plaintiffs identified above, all employees in Hourly Paid Positions at defendant's plants nationwide are similarly situated and routinely work and worked more than 40 hours in a work-week and receive premium payments in addition to their hourly wages, but were denied proper compensation because defendant miscalculated the regular rate with which it used to calculate employees' overtime compensation.

34. The precise amount of premium pay each plaintiff receives can be identified through defendant's payroll system or service providers, and through other work and pay records maintained by defendant, and thus the amount of damages can be determined that result from defendant's failure to include these payments in the regular rate of pay at which overtime is paid.

*Late Payment of Overtime Worked*

35. When plaintiffs earn overtime payments, defendant has delayed the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours.  The delay in payment takes place, because defendant failed to include the premium payment in its calculation of the plaintiffs' regular rates of pay for purposes of paying overtime for hours worked in excess of 40 hours a week. Then, months or years later, defendant paid some of this unpaid overtime compensation.

36. For example, during the 2016 calendar year, after April 2016, defendant made some overtime payments for pre-April 2016 overtime work, apparently, by defendant's own admission, in an attempt to make up for some failed overtime payments, but failed to provide liquidated damages or interest for these late payments.

37. For example, representative plaintiff LaClair worked in excess of 40 hours in a workweek in April 2016, but did not receive the payment for those hours until June 2016.

38. Individuals who left defendant's employ prior to April 2016 when these payments were made did not ever receive such payments.

39. Similar to the representative plaintiffs identified above, all employees in Hourly Paid Positions employed at DuPont's 50 plants nationwide are similarly situated and are paid for overtime hours worked more than two pay periods after the plaintiffs worked and earned the overtime compensation. Similarly, all of the plaintiffs received late payments after April 2016 that were allegedly made for underpayments for overtime work performed before April 2016, and such payments were made without interest and without liquidated damages and in improper amounts. The precise amount of overtime compensation that was delayed in each instance, can be identified through MyInfo, ADP and through other work and pay records.

## COUNT I

### FAILURE TO PAY PLAINTIFFS AND ALL SIMILARLY SITUATED EMPLOYEES IN COMPLIANCE WITH THE FLSA

40. Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

41. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be

included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include premium payments that are made in addition to employees' regular pay in the regular rates of pay at which overtime pay is calculated for the plaintiffs as required under the law.

42. Defendant's failure to include premium payments in plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b) (non-overtime premiums must be included in the regular rate at which overtime is paid). The failure to include these premium payments in plaintiffs' regular rates means that when plaintiffs are paid for overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA.

43. Further, the FLSA mandates that overtime compensation be paid on the regular pay day for the period in which such workweek ends. Overtime payments under the Act may not be delayed except as reasonably necessary to compute the amount owed and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying plaintiffs' overtime payments for working in excess of 40 hours a week by weeks, months, and in some cases years after the overtime having been worked.

44. Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

45. As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined. The employment and work and pay records for the plaintiffs are in the exclusive

possession, custody and control of defendant, or defendant's agents, and the plaintiffs are unable to state at this time the exact amount owing to them, but from these payroll records, plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a).  Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

46. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

47. Pursuant to 29 U.S.C. § 255(a), defendant's violation is willful, thus extending the recovery period back to June 1, 2014.

48. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law, all plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, all plaintiffs, on their own behalf and on behalf of others similarly situated, pray that this Court:

(a)  Enter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations under federal law, and obligations under state law, and deprived each of the plaintiffs of his/her rights;

(b)  Order a complete and accurate accounting of all the unpaid compensation to which the plaintiffs are entitled;

(c)  Award plaintiffs compensatory relief in the form of unpaid back pay compensation and liquidated damages equal to their unpaid back pay compensation;

(d)  Award plaintiffs interest on their unpaid compensation;

(e)  Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f)  Grant such other relief as may be just and proper.

Respectfully submitted,

/s/ Charles P. Yezbak
Charles P. Yezbak
Yezbak Law Offices
2002 Richard Jones Rd. Suite B-200
Nashville, Tennessee 37215
phone: 615-250-2000
yezbak@yezbaklaw.com

/s/ Gregory K. McGillivary
Gregory K. McGillivary*
Diana J. Nobile*
William Li*
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC  20005
Phone:  (202) 833-8855
gkm@wmlaborlaw.com
djn@wmlaborlaw.com
wwl@wmlaborlaw.com
*Pro Hac Vice motion pending

*Counsel for Plaintiffs*